**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CONNIE L. CAREY, | CASE NO. 4:17-cv-00119-CVE-GBC |
| Plaintiff, | |
| v. | (MAGISTRATE JUDGE COHN) |
| NANCY A. BERRYHILL,[1]<br>Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | |

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Connie L. Carey ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

**I. STANDARD OF REVIEW**

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[1] Ms. Berryhill, Deputy Commissioner for Operations, is leading the Social Security Administration, pending the nomination and confirmation of a Commissioner. Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.      Procedural History**

On November 14, 2013, Plaintiff protectively applied for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI") payments under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). (Tr. 174-79, 181-82). She alleged disability since May 2, 2012 (Tr. 32, 181), due to high blood pressure and cholesterol, fibromyalgia, chronic obstructive pulmonary disease (COPD), degenerative bone disease of the neck and back, diabetes, impairment to her rotator cuff, numbness in her right arm, loss of strength, neck pain, loss of concentration, suicidal thoughts, crying, and hearing voices. (Tr. 198, 233, 250). After early denials, Plaintiff requested a de novo hearing before an ALJ. (Tr. 136-37). The ALJ convened the hearing in October 2015, at which Plaintiff and a vocational expert ("VE") testified. (Tr. 27-62). On January 27, 2016, the ALJ rendered an unfavorable decision. (Tr. 9-26). Plaintiff

was 58 years old on the date of the ALJ's decision. (Tr. 174, 181). She has a high school education (Tr. 199) and past relevant work as an administrative secretary. (Tr. 59, 185-96, 199, 208-14). Plaintiff requested review of the ALJ's decision by the agency's Appeals Council. (Tr. 7-8). The Appeals Council denied Plaintiff's request (Tr. 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 422.210(a). This action followed.

### III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges three errors: (1) the ALJ violated the Winfrey test by failing to account for all of Plaintiff's physical and mental limitations while questioning the vocational expert ("VE") and forming the residual functional capacity ("RFC"); (2) the ALJ erred in his determination regarding the extent to which the intensity, persistence, and limiting effects of Plaintiff's symptoms affect her ability to perform work-related activity; and (3) the ALJ erred by not either "gridding out" the Plaintiff or performing Step Five of the sequential analysis. (Pl. Br. at 2, Doc. 14).

**A.     RFC and Winfrey**

    **1.     Performance of Past Relevant Work**

Plaintiff contends the ALJ failed to follow the Winfrey test and include Plaintiff's limitations of inability to interact with the community; remember and correctly spell words; and write legibly; while questioning the VE and forming the RFC. (Pl. Br. at 2). In the decision, the ALJ reviewed the record prior to proposing the hypothetical to the VE and formulating the RFC:

> The claimant has the following severe impairments: degenerative disc disease of the cervical status post fusion with radiculopathy, fibromyalgia …
>
> The claimant's medically determinable mental impairments of major depressive disorder and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore not severe …

> At the hearing, the claimant testified she stopped working following surgery because she could only work part-time and even then, experience pain and fatigue which seemed to increase over time. Following surgery, doctors initially wanted her to take [a] three-month leave of absence, but her employer could not hold her job that long. Her only income currently is her 401K. Her most difficult tasks, when working, were typing and writing because her arm would shake all the time preventing her from holding a pen. She attempted to take notes during business meetings but no one could read them afterwards because of her poor penmanship. The pain got so severe; she could not concentrate or remember words. Her injuries are a result of work and a motor vehicle accident in 1998.
>
> The claimant testified doctors advised her she has a pinched nerve on the right side of her neck, which affects both arms. She also has two degenerative discs. She has undergone two surgeries; nevertheless, she continues to experience pain that radiates from her neck into her arms and hands bilaterally. She also no longer has the ability to go out into the community to talk because of headaches that prevented her from concentrating on anything. Following surgery in 2011, she did not go to the doctor much because she does not have a vehicle. Now the city has started a bus service and she has an appointment with her doctor the week after the hearing. She initially had some relief following surgery; however, over years, her symptoms have returned and the pain and fatigue increased.

(Tr. 14-15, 17). Thus, the ALJ reviewed Plaintiff's testimony and severe impairments of degenerative disc disease of the cervical status post fusion with radiculopathy, fibromyalgia. From the record, the ALJ found Plaintiff had the RFC to perform:

> sedentary work … She has the ability to lift/carry, push/pull ten pounds occasionally, up to ten pounds frequently, sit, stand/walk six hours in an eight-hour workday, with normal breaks. No climbing of ladder, ropes, or scaffolding, she must avoid unprotected heights, or dangerous machinery. She can occasionally reach overhead with the right dominate arm but is limited to no more than normal levels of dust and fumes as in [an] office building. She can frequently grasp, finger, feel, and handle.

(Tr. 16-17). The ALJ formulated the RFC from consideration of all of the evidence. As for Plaintiff's allegations of inability to interact with the community; remember and correctly spell words; and write legibly, Plaintiff does not cite any medical evidence of this requiring these limitations in the RFC but solely cites her testimony at the hearing. (Pl. Br. at 3) (citing hearing testimony Tr. 35-37, 39). At the hearing, the ALJ noted Plaintiff had excellent work history working as an administrative secretary for the Cherokee Nation for 28 years until 2012. (Tr. 32-

35). The ALJ questioned whether Plaintiff deteriorated following the car accident in 1998, as she was still able to do her job. (Tr. 39). Plaintiff testified she injured her arm in an automobile accident in 1998 but she was still able to do her job. (Tr. 37). Plaintiff testified going to the doctor since neck surgery in 2011 has been "sporadic." (Tr. 39). The ALJ questioned the VE as to whether Plaintiff could perform her past work as an administrative secretary with the hypothetical RFC, as stated above. (Tr. 59-60). The VE testified Plaintiff could return to her past work. (Tr. at 60).

As cited below when considering Plaintiff's allegations of disabling limitations, the ALJ noted: "The claimant's history of treatment is not consistent with her allegations … The claimant alleges that she cannot use her hands due to [] neck pain that radiates into her arms, but she did not seek treatment for, or take any medication for her neck pain in four years." (Tr. 15). Moreover, the ALJ found: "It should also be noted that the [ALJ] requested the claimant have two consultative exams performed. However, the claimant failed to appear at each exam. This casts doubt on the claimant's credibility." (Tr. 20). The Tenth Circuit has upheld decisions where a plaintiff failed to appear at a consultative examination:

> We note also that the ALJ arranged for an orthopedic examination of appellant to supplement the record. Appellant refused to appear for that consultative examination, without explanation. The regulations warn that "[i]f you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind." 20 C.F.R. § 404.1518. Having refused to appear for a consultative examination scheduled for his benefit, appellant cannot complain when the ALJ rejected his claim that he met a listing for lack of evidence.

Callins v. Apfel, 202 F.3d 281, at *3 (10th Cir. 2000) (unpublished).[2] Thus, the ALJ had a sufficient basis to find Plaintiff lacked medical evidence to support her allegations of disability and to deny her claim.

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

6

### 2. **Winfrey** Test

Plaintiff contends the ALJ erred by failing to conduct the three-part Winfrey test when evaluating whether Plaintiff could perform her past work. (Pl. Br. at 2-3). Plaintiff cites SSR 82-62 and the "three-phase" analysis set forth in Winfrey:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen., SSR 82-62 (S.S.A. 1982).

> Step four of the sequential analysis … is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental RFC … in the second phase, he must determine the physical and mental demands of the claimant's past relevant work … In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and / or physical limitations found in phase one … At each of these phases, the ALJ must make specific findings.

Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996). At phase one, the ALJ found Plaintiff's RFC, listed supra. Plaintiff argues the ALJ found she could perform her past work as an administrative secretary but did not conduct the phase two evaluation regarding the mental and physical demands of the job. (Pl. Br. at 4). The ALJ asked the vocational expert "VE" at the hearing a hypothetical question from the RFC set forth above, and the VE testified such an individual could perform her past relevant work as an administrative secretary. (Tr. 59-60). The ALJ adopted this testimony in the decision and found Plaintiff could perform her past relevant work as an administrative secretary as it was actually and generally performed. (Tr. 20). Thus, the dictates of Winfrey are satisfied. See Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003) ("While the ALJ did not use the phrase 'I find' in connection with his conclusion [regarding the demands of claimant's past relevant

7

work], the form of words should not obscure the substance of what the ALJ actually did. The ALJ's findings were adequate here to satisfy the step four requirements articulated in Winfrey."). See Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). "Our review of the record indicates that the ALJ's question adequately included the limitations that she found were supported by the medical record. That record, along with the VE's testimony on existing jobs, provided substantial evidence to support the ALJ's step-five determination." Talamantes v. Astrue, 370 F. App'x 955, 959 (10th Cir. 2010).

**B.     RFC and Plaintiff's Credibility**

**1.     Testimony Regarding Intensity, Persistence, and Limiting Effects**

Plaintiff contends the ALJ erred in assessing Plaintiff's credibility regarding her intensity, persistence, and limiting effects. (Pl. Br. at 11). In the decision, the ALJ made the following findings when evaluating the medical evidence in conjunction with Plaintiff's credibility:

> Evidence reflects a history of degenerative disc disease of the cervical spine status post fusion, with radiculopathy, and fibromyalgia. The claimant complained of neck pain that radiates into her shoulders, arms, and hands bilaterally. Discharge records from Muskogee Regional Medical Center [on] February 22, 2011, reveal the claimant had undergone a C5-6 anterior cervical discectomy with interbody fusion and anterior cervical plating for decompression of spinal cord and nerve root establishing normal bony alignment.
>
> Additional medical records from Three Rivers Health Center August 26, 2011, showed the claimant reported no problems. When the claimant did present to WW Hastings Indian Hospital in December 2011, complaining of left shoulder pain, treatment was conservative with pain medication. Furthermore, x-rays of the claimant's left shoulder [on] January 8, 2013, were normal. This evidence is consistent with the above assessment that the claimant has the ability to lift/carry, push/pull ten pounds occasionally, up to ten pounds frequently, stand/walk and sit six hours in an eight-hour workday, with normal breaks.
>
> Moreover, x-rays of the claimant's left forearm taken August 19, 2014, at Three Rivers Health Center showed no fractures or dislocations, [and] there were

>no subcutaneous radiopaque foreign bodies in the forearm and humerus. Furthermore, a physical examination by Hugo Salguero, M.D., with Advanced Pain Specialist of Tulsa [on] January 8, 2015, was generally normal. Dr. Salguero observed abnormal range of motion testing in the head/neck area with limited extension and limited flexion. However, the claimant walked with a normal gait and had normal range of motion in the thoracic and lumbar as well and in the upper and lower extremities. Additionally, the claimant's motor strength was 5/5 bilaterally in the upper extremities …
>
>The claimant's statements concerning the intensity, persistence, and limiting effects of her neck/back pain is not consistent with her activities. The claimant testified that her neck/back pain is so severe that [she] can no longer write or hold a pen. Yet, in her function report, she states that she vacuums, sweeps and mops daily to clean pet hair off furniture. These activities are inconsistent with someone as severely limited as the claimant alleges and this reduces her credibility.
>
>The claimant's history of treatment is not consistent with her allegations concerning the intensity, persistence, and limiting effects of her degenerative disc disease of the cervical spine. The claimant alleges that she cannot use her hands due to [] neck pain that radiates into her arms, but she did not seek treatment for, or take any medication for her neck pain in four years. These inconsistencies significantly reduce the claimant's credibility.
>
>The claimant's history of treatment is not consistent with her allegations concerning the intensity, persistence, and limiting effects of her degenerative disc disease of the cervical spine. The claimant was scheduled for two physical consultative examination[s] by Social Security but failed to make either appointment. The claimant's lack of participation in her own treatment further reduces her credibility.

(Tr. 18). Thus, the ALJ put forth the reasons and the resulting conclusions as to Plaintiff's limitations and credibility. As the ALJ found, Plaintiff's subjective complaints were not consistent with the objective medical evidence. (Tr. 18-20). In January 2013, a left shoulder x-ray was normal. (Tr. 306-07). In February 2014, Dr. Malati noted Plaintiff walked in and out of his office without an assistive device. (Tr. 346). She had a nice, normal, steady gait, and she could sit, stand, and lie down without difficulty. (Tr. 346). She had full range of motion in her neck, shoulder, elbows, wrists, and hands. (Tr. 346). She had good (5/5) hand grip bilaterally and could heel-and-toe-walk without difficulty. (Tr. 346). In January 2015, Hugo Salguero, M.D., found Plaintiff had a normal gait and coordination, normal ranges of motion and full (5/5) strength in her arms and

9

legs, and intact sensation, although she had limited range of motion in her neck. (Tr. 412). The following month, Lam Nguyen found Plaintiff had a normal gait and ranges of motion and strength in her arms, except for slightly diminished (4/5) grip strength on the right, although she also had limited neck range of motion. (Tr. 407). She also had intact coordination and sensation. (Tr. 408). 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical evidence"); Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988) (in assessing a claimant's statements about her impairments, an ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence"). The above findings by the ALJ provide substantial evidence to support the ALJ's evaluation as to Plaintiff's credibility and her physical limitations within the RFC. The Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler, 68 F.3d at 391).

**C.     ALJ's Step Four Findings**

Plaintiff states the ALJ erred by finding she could perform her prior work as an administrative secretary, since if she could not perform her past work she would "grid out" according to the medical vocation guidelines. (Pl. Br. at 11-12). In the decision, the ALJ thoroughly reviewed the record and medical opinions, identified Plaintiff's severe impairments of degenerative disc disease of the cervical status post fusion with radiculopathy, fibromyalgia, and limited Plaintiff to sedentary work with the above RFC. (Tr. 14-21). Plaintiff contends her limitations prevent her from performing her past work. (Pl. Br. at 12). As discussed previously, the ALJ considered Plaintiff's testimony and the objective medical evidence prior to concluding she could perform her past work:

> As for the opinion evidence, Adel Malati, M.D., performed a comprehensive internal medical examination [on] February 11, 2014. The claimant's chief complaints included neck and back pain. The claimant reported being involved in a motor vehicle accident in 1998 that resulted in joint disease and fusion of the C5-6 vertebrae; in addition to left hip pain, neck pain and back pain. During a physical examination, Dr. Malati observed the claimant walked in and out of the office without use of an assistive device. Her gait was normal and stable. She had no problem sitting, standing, or lying down; as well as full range of motion in the neck, shoulders, elbows, wrists, and hands. She had good grip at 5/5 equal and bilaterally, and full range of motion in the back, hips, knees and ankles all bilaterally. Heel/toe walking was normal. A Fibromyalgia examination by Dr. Malati revealed only four tender points out of eighteen. The [ALJ] gives great weight to Dr. Malati's assessment because it is based not only on a review of the available medication evidence in this case but also on objective testing and a physical examination.
>
> The [ALJ] has also considered an assessment by John Pataki, M.D., September 5, 2014, a State agency medical consultant. Dr. Pataki assessed the claimant has the ability to lift/carry, push/pull 50-pounds occasionally, 25 pounds frequently, stand/walk and sit six hours in an eight-hour workday. She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The [ALJ] give[s] little weight to Dr. Pataki's assessment because he does not appear to have considered the claimant['s] previous cervical spine fusion residuals or other subjective complaints …
>
> It should also be noted that the [ALJ] requested the claimant have two consultative exams performed. However, the claimant failed to appear at each exam. This casts doubt on the claimant's credibility.

(Tr. 19-20). Thus, the ALJ found the objective medical evidence did not support Plaintiff's allegations of disabling limitations. Moreover, the ALJ did account for the severe physical impairments, as the ALJ limited Plaintiff to sedentary work. See SSR 96-8p, 1996 WL 374184, at *3 ("RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy."). In the RFC finding, the ALJ explained the limitation to sedentary work accounted for Plaintiff's medically-supportable symptoms and the opinions of record, and the ALJ explained how he came to that conclusion. (Tr. 14-21). See SSR 96-8p, 1996

WL 374184, at *7 (addressing the requirements for articulating RFC finding). The ALJ's decision fulfilled the requirements of the regulations.

Therefore, the record provided substantial evidence to support the ALJ's decision. It is not the reviewing court's position to reweigh the evidence or substitute judgment. As the Tenth Circuit has explained:

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform her past work as an administrative secretary.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than June 6, 2018.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

>determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on May 23, 2018.

_____
**Gerald B. Cohn**
**United States Magistrate Judge**